UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RA PTAH TAHARKA ALLEN,                              :

                                Plaintiff,              :

           -against-                              :

N.Y.C. HOUSING AUTHORITY,                           :

                         Defendant.      :
--------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 7/16/12

10 Civ. 168 (CM) (DF)

**REPORT AND**
**RECOMMENDATION**

**TO THE HONORABLE COLLEEN McMAHON, United States District Judge:**

This case has been referred to this Court for general pretrial supervision, and currently

before the Court is a motion by *pro se* plaintiff Ra Ptah Taharka Allen ("Plaintiff") to amend his

Complaint to replace certain of his originally-pleaded federal claims with an entirely new federal

claim, and to add his wife as a second *pro se* plaintiff. (Dkt. 31.)

Ordinarily, this Court would exercise its authority under 28 U.S.C. § 636(b) to decide a

motion to amend. *See Marsh v. Sheriff of Cayuga County*, No. 99-368, 36 Fed. App'x 10, 11 (2d

Cir. 2002) (finding that magistrate judge had acted within his authority in denying motion to

amend); *Jean-Louis v. American Airlines*, No. 08-CV-3898 (FB), 2010 WL 3023943, at *1 n.3

(E.D.N.Y. July 30, 2010) (noting that motions to amend are considered "non-dispositive" and

thus within the scope of magistrate judge's authority).  In this case, however, it is this Court's

view that an appropriate resolution of the motion to amend would be the termination of all of

Plaintiff's federal claims, such that all that would remain in the case would be pendent state and

local claims.  As it is also this Court's view that the Court should then decline to exercise

supplemental jurisdiction over such claims, this Court is addressing the entire matter in the

context of a Report and Recommendation. *Cf. Jean-Laurent v. Wilkerson*, No. 09-1929-pr, 461

Fed. App'x 18, 25-26 (2d Cir. 2012) (holding that, where decision on motion to amend effectively resulted in the dismissal of claims, magistrate judge had exceeded scope of authority).

For the reasons set forth below, I recommend that (1) Plaintiff's original federal claims be deemed abandoned and be dismissed with prejudice, (2) Plaintiff be denied leave to add his proposed new federal claim, on the ground that the amendment would be futile, and (3) Plaintiff's remaining state-law tort claims be dismissed pursuant to 28 U.S.C. § 1367, without prejudice to Plaintiff's right to raise those claims – whether alone or with his wife – in state court.

## BACKGROUND

### A.   Plaintiff's Complaint

Plaintiff, who is African-American, filed his initial Complaint in January 2010, alleging that Defendant, which operates the housing complex in which Plaintiff lives, had failed to remove toxic mold in his apartment because of Plaintiff's race, and had thus violated Plaintiff's rights under the 14th Amendment; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*.; and 42 U.S.C. § 1981. (*See* Complaint, dated Nov. 25, 2009 ("Compl.") (Dkt. 2).)  According to Plaintiff, Defendant had been aware of the mold since some time in 2007, but had offered no solution other than to paint over it, which had been done in 2006 without success. (*See* Compl., ¶ 2.)  Plaintiff also alleged that Defendant was informed that an inspector (sent to the apartment

by "the Little Sisters of the Asomtion" [*sic*][1] (capitalization omitted)[2]) had determined that the mold was caused by a leak, but that Defendant failed to perform repairs. (Compl., ¶ 2; *see also id.* ("Stat[e]ment of Claim").)  Plaintiff alleged that the mold had caused his wife to be hospitalized with asthma, and that both he and his wife had developed other health problems as a result of the mold.[3]  (*Id.* (Statement of Claim).)   Plaintiff further stated, in the Complaint: "If I was a white[]man the aformention[ed] acts would[]n[']t have happen[ed], I beli[e]ve that they were racially motivated because I[] am black."  (*Id.* (Statement of Claim).)

### B.   The Proposed Amended Complaint

#### 1.   Plaintiff's Prior Attempts To Amend His Pleading

At a case management conference held on May 13, 2011, Plaintiff informed the Court that he did not intend to amend his claims or to join any additional parties.  The Court, however, noted that Plaintiff seemed to be asserting that his wife had personally suffered injury as a result of Defendant's allegedly unlawful conduct, and explained to Plaintiff that no damages could be recovered for his wife's injury unless she were a party to the action.  The Court further explained to Plaintiff the process for amendment, and set a deadline of June 31, 2011 for any motions to

---

[1] The Court assumes that this reference is to the Little Sisters of the Assumption Family Health Service, which describes itself as a nonprofit, community-based organization. *See* http://www.littlesistersfamily.org/.

[2] Plaintiff's various submissions have all been typed with all capital letters.  For ease of reading herein, the Court has eliminated the capitalized font when it quotes from those submissions.

[3] Despite suggesting in his Complaint that he had developed "cold[-]like symptoms and ra[]shes" (*id.*), when Defendant asked Plaintiff, by interrogatory, to identify any healthcare professionals who had evaluated or treated him, Plaintiff responded by stating, "Plaintiff is not suing for illnesses" or "rash" (Declaration of Mindy Merdinger Blackstock in Opposition to Plaintiff's Motion To Amend the Complaint, dated Oct. 28, 2011 ("Blackstock Decl.") (Dkt. 32), Ex. C (Answers to Defendant[']s I[n]ter[r]ogatories), at ¶¶ 10, 11).

amend or for joinder.  By letter dated May 14, 2011 – one day after the conference – Plaintiff

wrote a letter to the Court, stating that he had discussed the matter with his wife, who wished to

become a plaintiff in the action, and asking the Court for leave to amend his Complaint to add

his wife as a party.  That letter, however, was not accompanied by any proof of service and did

not enclose a proposed amended pleading.  Therefore, at the Court's direction, the *Pro Se* Office

returned Plaintiff's letter to him and provided him with detailed instructions as to how to file a

proper motion to amend.

   The Court held another case management conference on July 14, 2011.  Although the

motion deadline had passed by that point and Plaintiff had still not filed a proper motion to

amend, Plaintiff informed the Court that he had not received the material sent to him by the

*Pro Se* Office.  The Court took note of this and, in light of Plaintiff's *pro se* status and his prior

unsuccessful attempt to amend his Complaint, the Court modified its Scheduling Order so as to

give Plaintiff another opportunity to file a motion to amend.  The Court again explained to

Plaintiff what would be required for such a motion.  In particular, the Court instructed Plaintiff

that, if he wished to amend his Complaint or to join any parties, he should serve a proposed

Amended Complaint on Defendant; the Court explained that, if Defendant did not object to the

amendment, the Court would accepted the amended pleading for filing, without requiring a

formal motion.  The Court re-set Plaintiff's motion deadline to August 31, 2011.  (*See* Dkt. 23.)

   Shortly after the July 14 conference, on or about July 22, 2011, Plaintiff apparently sent a

short statement to Defendant's counsel, indicating that he intended to "join [his] wife" to his

Complaint, and wrote, "If there are any objections[,] forward your objections to the Plaintiff."

(Blackstock Decl., Ex. E.)  By letter dated August 17, 2011, Defendant's counsel responded to

Plaintiff, noting that, as Plaintiff had not provided a copy of a proposed amended complaint (as

instructed by the Court) or even identified his wife by name, Defendant could not consent to the proposed joinder. (*Id.*, Ex. F.) It appears, however, that Plaintiff did not receive Defendant's letter, as, by submission to the Court dated August 22, 2011, Plaintiff wrote that he had "confer[r]ed with the Defendant if there were any objection in rega[]rd to the Plaintiff joining his wife to this case [and] the Defendant has not re[s]ponded." (*Id.*, Ex. G.) Plaintiff characterized his August 22 submission as a motion to join his wife as an additional party to the action. (*See id.*)

In a third case management conference, held on October 4, 2011, this Court denied Plaintiff's motion in the form in which it was submitted. The Court, however, again extended Plaintiff's deadline for moving to amend – this time, to October 14, 2011 – thereby giving Plaintiff one final opportunity to submit a properly-supported motion.

### 2.    **The Instant Motion To Amend**

On October 13, 2011, Plaintiff re-filed his motion to amend his Complaint and to join his wife, identified as Towan Allen, as a plaintiff. (Dkt. 31.) This time, with his motion, Plaintiff submitted a proposed Amended Complaint, which was signed by both Plaintiff and his wife. (*See id.*, at 3-11 (proposed Amended Complaint, dated Sept. 19, 2011 ("Proposed Am. Compl.")).[4]) With respect to Defendant's alleged failure to remedy a mold condition in Plaintiff's apartment, the proposed Amended Complaint includes the same core factual allegations as the Complaint – *i.e.*, that Defendant had been aware of the mold condition in the

---

[4] Although Plaintiff's wife did not sign the papers seeking leave to amend and did not file her own motion to intervene, she apparently did sign the proposed Amended Complaint on her own behalf. While Plaintiff cannot be heard to speak for his wife, her own signature on the proposed Amended Complaint appears to manifest an intention to proceed *pro se*, on her own behalf, in this case, should the Court permit her to be added to the action.

apartment since 2007, but had failed to remedy it.  (*See id.*, ¶ 2.)  The proposed pleading,

however, focuses particularly on the physical harm that this allegedly caused to Plaintiff's wife.

(*See id.*, ¶ 3 (alleging that Plaintiff's wife cannot be in contact with mold, that the mold in the

apartment has triggered asthma attacks requiring hospitalization, and that she now requires

oxygen 24 hours a day).)  Moreover, in contrast to Plaintiff's initial Complaint, the proposed

Amended Complaint is completely silent with respect to any federal charge of race

discrimination.  Instead, the proposed pleading claims that Defendant should be held liable,

under 42 U.S.C. § 1983, for a deprivation of due process under the so-called "state-created

danger doctrine."  (*Id.* (Count 1).)

  In his motion for leave to file the proposed Amended Complaint, Plaintiff argues that, in

addition to suffering a deprivation of her federal rights, his wife "has "suffered for the

negli[]gence of [Defendant], she has been hospitalize[d] on num[e]rous occa[s]ions, [and] the

mold has contributed to her declining health."  (Dkt. 31 ("Plaintiff Pleading Join[d]er of Parties"

(referred to herein as "Pl. Mot. To Amend")), at 2.)  According to Plaintiff, his wife has "the

right to represent herself and the right to have her day in court."  (*Id.*)

  On October 28, 2011, Defendant filed an opposition to Plaintiff's motion, arguing that

the motion should be denied on the grounds that (1) the proposed claim fails to state a claim for

the denial of substantive due process; (2) Plaintiff unduly delayed in seeking to amend; and

(3) given the change in Plaintiff's claim and legal theory, it would be unduly prejudicial to

Defendant to allow the amendment at this stage in the litigation.  (*See generally* Defendant's

Memorandum of Law in Opposition to Plaintiff's Motion To Amend the Complaint, dated

Oct. 28, 2011 ("Def. Mem.") (Dkt. 33); *see also* Blackstock Decl.)  Plaintiff submitted a reply on

November 9, 2011.  (Dkt. 42 ("Plaintiff[']s Answer to Defendant[']s Opposition to Plaintiff[']

Motion to Amend").)

### C.      Plaintiff's Clarification of His Intent To Abandon His Original Claims

In light of the proposed change in Plaintiff's legal claims, this Court issued an Order on

February 16, 2012 (Dkt. 39), which, in relevant part, sought clarification from Plaintiff as to

whether he was, in fact, seeking to abandon his initial federal claims.  The Court's Order stated:

> Prior to Plaintiff's filing of his motion to amend, the Court
> explained to Plaintiff, during [a] case-management conference . . .,
> that any proposed Amended Complaint would need to stand on its
> own and include all of Plaintiff's claims.  Nonetheless, the Court
> notes that Plaintiff is proceeding in this case *pro se*, and that he
> still may not have understood that, if he did not re-allege his
> original claims in his proposed amended pleading, those claims
> could be considered abandoned.  Under the circumstances, and
> before this Court rules on Plaintiff's motion to amend, the Court
> will give Plaintiff the opportunity to clarify whether he, in fact,
> wishes to drop his race discrimination claim and any other claims
> alleged in his Complaint that are not also alleged in his proposed
> Amended Complaint.

(*Id.*, at 2-3.)  The Court ordered Plaintiff to clarify in writing whether he was, "in fact, seeking to

drop his original claims and to proceed solely on the claims asserted in his proposed Amended

Complaint."  (*Id.*, at 3.)

By submission dated February 27, 2012, Plaintiff informed the Court that he "is seeking

to drop the original claim and proce[e]d on the claims asserted in the proposed Amended

Co[m]plaint."  (Letter to the Court from Plaintiff, dated Feb. 27, 2012 (Dkt. 40).)

### DISCUSSION

### I.      PLAINTIFF'S ORIGINAL FEDERAL CLAIMS

A party may voluntarily drop claims by choosing not to include them in a proposed

amended pleading.  In such a circumstance, it is appropriate for the Court to dismiss the

abandoned claims with prejudice. *See, e.g., New York State Ass'n of Career Schools, Inc. v. State Educ. Dep't of the State of N.Y.*, 142 F.R.D. 403, 406 (S.D.N.Y. 1992) (holding that "the claims abandoned by the proposed complaint [are] deemed dismissed with prejudice"); *see also Oteri-Harkins v. City of New York*, No. 97–CV–2309 (JG), 1998 WL 817689, at * 2 n.2 (E.D.N.Y. Feb. 5, 1998) (dismissing with prejudice claims that were voluntarily withdrawn); *Marks v. National Communications Ass'n, Inc.*, 72 F. Supp. 2d 322, 328 n.6 (S.D.N.Y. 1999) (dismissing abandoned claims with prejudice (citations omitted)).

In this case, in response to a specific query by the Court, Plaintiff has unequivocally confirmed, in writing, his desire to drop his originally-pleaded federal claims. For this reason alone, it would be appropriate for the Court to dismiss those claims with prejudice. Beyond this, however, this Court notes that Defendant has spent nearly two years defending against Plaintiff's original federal claims, all the way through a now-closed discovery period, and that, under such circumstances, it would be unduly prejudicial for Defendant to have to face those claims again in the future. *See Shell v. Brzezniak*, 365 F. Supp. 2d 362, 368-69 (W.D.N.Y. 2005) (denying plaintiff's application to amend his *pro se* Section 1983 complaint for a third time to add deliberate indifference claim more than a year after he abandoned that claim by omitting it from his first amended complaint because, *inter alia*, defendant would be unduly prejudiced by the late amendment).

For these reasons, I recommend that Plaintiff's federal race-discrimination claims, as asserted in his original Complaint under the 14th Amendment, the FHA, and Section 1981, be dismissed with prejudice.

## II.   PLAINTIFF'S PROPOSED NEW FEDERAL CLAIM

As noted above, the new federal claim that Plaintiff seeks to add, by way of amendment of his pleading, is a due process claim under the so-called "state-created danger doctrine." Apart from any prejudice that this late amendment may cause to Defendant, Plaintiff's motion to add this new claim should be denied on the ground that the amendment would be futile.

### A.   Applicable Legal Standards

#### 1.   Rule 15(a)

Rule 15(a) of the Federal Rule of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Similarly, when deciding motions to join additional parties, courts follow "'the same standard of liberality afforded to motions to amend under Rule 15.'" *Newton v. City of New York*, 07 Civ. 6211 (SAS), 2010 WL 1328461, at *1 (S.D.N.Y. Apr. 1, 2010) (quoting *Sly Magazine, LLC v. Weider Publ'ns LLC*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007)); *see also* Fed. R. Civ. P. 21 ("the court may at any time, on just terms, add or drop a party").

A motion to amend a pleading or to join a party should be denied, however, "if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (citation omitted).  An amendment should be rejected as "futile" when the proposed new pleading would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Milanese v. Rust-oleum Corp.*, 244 F.3d

104, 110 (2d Cir. 2001); *see also Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999) (where it is evident that a proposed amended complaint would be subject to "immediate dismissal" for failure to state a claim or on some other ground, the Court will not permit the amendment).  If, however, the party seeking to amend "'has at least colorable grounds for relief, justice . . . require[s]'" that its motion be granted.  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).

Ultimately, the decision whether to grant leave to amend is within the sound discretion of the Court.  *See Foman*, 371 U.S. at 182.

## 2.   The "State-Created Danger Doctrine"

The so-called "state-created danger doctrine," on which Plaintiff's proposed Amended Complaint is based, has its origins in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), in which the Supreme Court held that a local agency had no constitutional duty to protect a child from the danger posed by a parent known by the agency to have been abusing the child.  As the Supreme Court noted, the facts of the case – which involved a boy who was severely beaten by an abusive father, resulting in permanent brain damage – were "undeniably tragic." *Id.* at 191.  Nonetheless, the Court rejected the argument of the child and his mother that the agency had violated the child's 14th Amendment due process rights by failing to intervene to protect him from a known risk of violence.  *Id.* at 193; *see generally id.*  In general terms, the Court held that, while the Due Process Clause of the 14th Amendment "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' . . . its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* at 195.  On the facts presented, the Court found that "[w]hile the State may have been aware of the dangers that [the

10

child] faced in the free world, it played no part in their creation, nor did it do anything to render

him any more vulnerable to them." *Id.* at 201 (emphasis added).

Subsequent to *DeShaney*, the Second Circuit and other courts have parsed the language

of that decision, and have found that where states *have* played a part in the creation of a

particular danger or made a plaintiff more vulnerable to some danger, *DeShaney* may allow for a

finding of a constitutional violation. For example, in *Dwares v. City of New York,* 985 F.2d 94

(2d Cir. 1993), the Second Circuit found a claim under 42 U.S.C. § 1983 to be viable, where the

plaintiff alleged that defendant police officers had "conspired with . . . 'skinheads' to permit the

latter to beat up flag burners [at a demonstration] with relative impunity, assuring the 'skinheads'

that unless they got totally out of control they would not be impeded or arrested," *id.* at 99. The

court reasoned that such alleged conduct by state actors went "well beyond" the conduct

addressed in *DeShaney*, reading *DeShaney*

> to imply that, though an allegation simply that police officers had
> failed to act upon reports of past violence would not implicate the
> victim's rights under the Due Process Clause, an allegation that the
> officers in some way had assisted in creating or increasing the
> danger to the victim would indeed implicate those rights.

*Id.*[5] Similarly, in *Pena v. Deprisco*, 432 F.3d 98 (2d Cir. 2005), the Second Circuit upheld a

Section 1983 claim against police officers who allegedly "communicated to [an off-duty fellow

officer] that he was free to drink to excess and drive in that condition," *id.* at 110, "without fear

of punishment," *id.* at 111. Drawing a distinction between the "passive" conduct at issue in

---

[5] Another holding of *Dawes*, regarding the sufficiency of the plaintiff's pleading of a
claim for municipal liability under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658
(1978) (an issue not relevant to Plaintiff's motion to amend in this case), was effectively
overruled by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507
U.S. 163 (1993). *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).

*DeShaney* and the "active" conduct as issue in *Dwares*, *see id.* at 109-10, the court concluded

that,

> when . . . state officials communicate to a private person that he or
> she will not be arrested, punished, or otherwise interfered with
> while engaging in misconduct that is likely to endanger the life,
> liberty or property of others, those officials can be held liable
> under section 1983 for injury caused by the misconduct . . . .

*Id.* at 111; *see also Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 429

(2d Cir. 2009) (holding that a state actor's affirmative conduct "may give rise to an actionable

due process violation if it communicates, explicitly or implicitly, official sanction of private

violence" (citations omitted)).[6]

The Supreme Court, though, has continued to stress that the 14th Amendment's due

process guarantee must not be read to impose liability "whenever someone cloaked with state

authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  In

particular, the Court has categorically rejected that mere negligent conduct by state officials can

meet the threshold needed to show a due process violation.  *Id.*  Rather, the Court has noted that

for such a violation to be found, the conduct at issue should "shock the conscience."  *Id.*

Conduct "intended to injure in some way unjustifiable by any government interest" is most

---

[6] The Second Circuit has also recognized an exception to the general principle that the
Due Process Clause "confer[s] no affirmative right to governmental aid," *DeShaney*, 489 U.S.
at 196, where the State or its agents have a "special relationship" to the victim, *see Matican,* 524
F.3d at 155.  In this circuit, this exception has been found to apply where the victim is
incarcerated or is an involuntarily-committed mental patient.  *See id.* at 155-56.  Indeed, the
Second Circuit has noted that its own opinions have "focused on involuntary custody as the
linchpin of any special relationship exception."  *Id.* at 156 (citing cases); *see also DeShaney*, 489
U.S. at 199-200 (noting that "when the State by the affirmative exercise of its power so restrains
an individual's liberty that it renders him unable to care for himself, and at the same time fails to
provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable
safety – it transgresses the substantive limits on state action set by the Eighth Amendment and
the Due Process Clause." (citations omitted)).  This exception, therefore, is not applicable here.

likely to reach the "conscience-shocking level." *Id.*, at 849. Reckless conduct or deliberate indifference (*i.e.*, conduct which falls between the two poles of mere negligence, on the one hand, and intentional misconduct on the other) "is a matter for closer calls," where the Court must examine the specific circumstances presented to determine if the conduct is sufficiently conscience-shocking to be actionable as a due process violation. *Id.* at 849-50.

Based on the law discussed above, the Second Circuit and district courts within this circuit have recognized, first, that "[o]nly an *affirmative* act can amount to a violation of substantive due process," *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (emphasis added) (noting that "[i]t is not enough to allege that a government actor failed to protect an individual from a known danger to bodily harm . . ." (citations omitted)), and, second, that, even if a defendant's affirmative conduct may potentially fall within the "state-created danger" exception to the narrow construction of the 14th Amendment articulated in *DeShaney,* the plaintiff must still overcome a "further hurdle:  he must show that the [state actor's] behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" *Matican*, 524 F.3d at 155 (quoting *Lewis*, 523 U.S. at 848 n.8). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Lombardi*, 485 F.3d at 81 (internal quotation marks and citations omitted) (affirming dismissal of claim that government actors had violated the constitutional rights of search, rescue and clean-up workers at the World Trade Center site by misrepresenting safety of air at the site, on the ground that government conduct did not shock the conscience); *see also, e.g., Lesperance v. County of St. Lawrence*, No. 7:10-CV-01273, 2011 WL 3651161, at *5-6 (N.D.N.Y. Aug. 18, 2011) (dismissing, for lack of affirmative and "conscience-shocking"

13

conduct, plaintiff's Section 1983 claim alleging failure to give proper supervision to parolee, in the face of family's warnings that parolee was abusing alcohol and engaging in violent behavior).

**B.      Viability of Plaintiff's Proposed "State-Created Danger" Claim**

As explained above, Plaintiff now seeks to proceed on a Section 1983 claim based on Defendant's alleged violation of his and his wife's due process rights, under the state-created danger doctrine.  Plaintiff argues that his proposed allegations that Defendant failed to remedy a mold condition in his apartment – when Defendant knew of both the existence of the mold and its potential adverse affects, particularly on his wife's health – are sufficient to state a 14th Amendment due-process claim.  Yet, the facts that Plaintiff now seeks to allege cannot state a viable constitutional claim by either Plaintiff or his wife, as neither can meet the threshold requirement of demonstrating that Defendant's alleged conduct was "active" or "affirmative," as opposed to merely "passive."  *See DeShaney*, 489 U.S. at 202-03; *Pena*, 432 F.3d at 109-110.

In fact, courts have rejected similar claims, in cases where state actors have been accused of failing to remedy mold conditions in public housing and even in a public school.  In *Lewis v. Wheatley*, No. 1:11 CV 00644, 2012 WL 777114 (N.D. Ohio Mar. 8, 2012), the plaintiffs – participants in the Section 8 Housing Program funded by a federal agency and administered by a municipal housing authority – alleged that they had suffered exposure to mold and contaminants as a result of the defendants' failure to test, inspect or repair the property.  *See id.* at *2 (*see also* description of plaintiffs' factual allegations, as set out in magistrate judge's underlying Report and Recommendation, 2012 WL 774991 (N.D. Ohio Jan. 5, 2012), at *1-2).  The district court flatly rejected the plaintiffs' 14th Amendment due process claim because it was based on the

14

defendants' alleged "inaction," as opposed to their actual creation of harm, rendering the claim

unsustainable under *DeShaney*. *See Lewis*, 2012 WL 777114, at *1-2.

Likewise, in *J.S. ex rel. Simpson v. Thorsen*, 766 F. Supp. 2d 695 (E.D. Va. 2011), the

court rejected the 14th Amendment claim of a child who allegedly suffered significant harm

(including potential permanent immune system and cognitive injury) when, despite the school's

knowledge of mold contamination in the child's school and the child's serious allergic reaction

to the mold, school officials failed to remedy the dangerous condition, *see generally id.*

Although the plaintiff argued that the defendant officials had either created the danger or "used

their authority in a way that rendered Plaintiff more vulnerable" to it, *id.* at 704, the court found

that the plaintiff's complaint did "not plausibly allege intentional conduct intended to injure," *id.*

at 706, and held that, under the circumstances, the state-created danger doctrine could not be

extended to require the officials to provide their students with a safe environment, *see id.* at 710;

*see also Greene v. Plano Independent School District*, 227 F. Supp. 2d 615, 618-19 (E.D. Tex.

2002) (acknowledging that the state-created danger doctrine has been recognized in situations

where state actors created or increased an individual's danger from third persons, but declining

to extend the doctrine to situations involving danger from a condition on property), *aff'd*, 103

Fed. App'x 542 (5th Cir. 2004).[7]

---

[7] In his proposed Amended Complaint (*see* Proposed Am. Compl. (Count II)), Plaintiff cites another case involving a failure to remediate a mold condition, *McKinney v. Philadelphia Housing Authority*, No. 07-4432, 2010 WL 2510382 (E.D. Pa. June 16, 2010), in which the district court had initially denied the defendant's motion for summary judgment on a state-created danger claim, *see id.* That case, however, involved claims that the defendant had engaged in types of affirmative conduct that are not at issue here. *See McKinney*, 2010 WL 2510382, at *2. In any event, the decision cited by Plaintiff was subsequently vacated by the court. *See id.* at *4.

Here, as in the cases cited above, the thrust of Defendant's proposed amendment is that Defendant has violated his and his wife's constitutional rights through a failure to take appropriate steps to remedy a toxic mold condition. (*See generally* Proposed Am. Compl.) Plaintiff alleges that, although Defendant painted over the mold in his apartment on two prior occasions, the mold returned, and that Defendant was aware of the problem, but did not properly address it. (*Id.*, ¶ 2.) Plaintiff also alleges that, during the time that the mold has been present in the apartment, his wife has begun to have asthma attacks, which are triggered by irritants such as mold, smoke and paint. (*Id.*, ¶ 3.) He also continues to complains of his own "cold[-]like symptoms and rashes." (*Id.* (Statement of Claim).) In short, Plaintiff's proposed pleading alleges that Defendant's knowing failure to remove the mold has put his and his wife's health and safety at risk. (*See id.*) Even taking these allegations as true, they do not describe active, affirmative conduct that creates a danger or that renders Plaintiff or his wife more vulnerable to a known danger. Rather, these allegations describe a "passive" failure to act, which is not sufficient to state a substantive due process claim. *See DeShaney*, 489 U.S. 189; *Dwares,* 985 F.2d at 99; *Pena*, 432 F.3d at 110-11; *Lewis v. Wheatley*, 2012 WL 774991, at *8 (Report and Recommendation) (explaining that, while defendants "may have been in a position to head off the injury that later materialized, the alleged conduct simply does not constitute risk-creating as a matter of law").

"[T]he difference between standing back and doing nothing, . . . and assisting in creating or increasing the danger to the victim, . . . although subtle, is nevertheless distinguishable." *Lesperance*, 2011 WL 3651161, at *4 (internal quotation marks and citations omitted). In his proposed amended pleading, the only "active" conduct alleged by Plaintiff is that Defendant had twice, previously, tried to deal with the mold by painting over it. Plaintiff does not claim that the

16

act of painting itself created the mold condition; rather, he merely alleges that this effort to

remediate the mold condition was ineffectual and inadequate.  (*See* Proposed Am. Compl.

(Statement of Claim (summarizing claim by stating that "[t]he[] act of not removing the

mold . . . has put the plaintiffs and the[ir] family['] health and saf[e]ty at risk")).)  In any event,

even if Plaintiff were to contend that Defendant's act of painting, or its use of a certain type of

paint, had exacerbated the mold condition of Plaintiff's wife's reaction to it,[8] such conduct could

not be said to "shock the conscience," so as to give rise to a due process claim.  *See Kaucher v.*

*County of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006) (failure to take sufficient action to protect

corrections officer from infectious bacteria that had contaminated a jail facility was not

"conscience-shocking").  Indeed, Plaintiff himself describes Defendant's alleged conduct as

negligent (*see* Pl. Mot. To Amend, at 2 (arguing that "Mrs. Allen has suffered for the

neg[l]i[]gence of NYCHA")), and, as discussed above, "liability for negligently inflicted harm is

categorically beneath the threshold of constitutional due process."  *County of Sacramento*, 523

U.S. at 849; *see also Greene*, 227 F. Supp 2d at 619 (holding that plaintiff had not stated a due

process claim where "her allegations really amount[ed] to no more than a contention that

[d]efendants were, at most, grossly negligent in the handling of the toxic mold situation"

(citation omitted)).  Quite simply, even a grossly misguided attempt to address a mold situation

cannot be described as conduct that is "truly brutal and offensive to human dignity," *Lombardi*,

---

[8] In his proposed Amended Complaint, Plaintiff alleges that his wife "cannot not be in
contact . . . [with] paint such as mercury brand paint used by the [Defendant]." (Proposed Am.
Compl., ¶ 3.)  He also attaches an undated doctor's note, stating that Plaintiff's wife "has severe
asthma allergies" and requesting that "mercury[-]based paint" not be used in her apartment.
(Dkt. 31 (exhibits to Proposed Am. Compl.), at 11.)  Nothing in the proposed pleading, however,
suggests that Defendant, even in the past, deliberately used a type of paint that it knew would be
harmful to Plaintiff's wife. (*See generally* Proposed Am. Compl.)

485 F.3d at 81 (internal quotation marks and citation omitted), so as to constitute a constitutional violation.

The Court notes that Defendant's alleged failure to remove the mold from Plaintiff's apartment, especially if Defendant knew of Plaintiff's wife's adverse health reactions to the mold, might give rise to tort liability under state law. *See Greene*, 227 F. Supp. 2d at 619 (noting that plaintiff alleging defendants' failure to remediate mold condition in public school "may have stated a claim sounding in state tort law"). In *DeShaney* itself, the Supreme Court noted that "[i]t may well be that, by voluntarily undertaking to protect [the child] against a danger it concededly played no part in creating, the state acquired a duty under state law to provide him with adequate protection against that danger." *DeShaney*, 489 U.S. at 201-02. The Supreme Court, however, has emphasized that the Due Process Clause of the 14th Amendment "does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 202; *see also County of Sacramento*, 523 U.S. at 848 (noting that "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States" (internal quotation marks and citation omitted)). At bottom, even "[i]ndefensible passivity and nonfeasance do not rise to the level of a constitutional violation." *Lesperance*, 2011 WL 3651161, at *4 (internal quotation marks and citation omitted).

For these reasons, Plaintiff' proposed state-created danger claim does not state a plausible claim for relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007), and thus his proposed amendment to add such a claim should be rejected as futile. Accordingly, I recommend that Plaintiff's motion to amend his Complaint to add a claim under the state-created danger doctrine be denied.

18

III.   **REMAINING STATE AND LOCAL CLAIMS**

Should the Court dismiss Plaintiff's original federal claims and the reject his newly-proposed federal claim, all that would remain in this case would be pendent state and local claims – whether asserted by Plaintiff alone, or together with his wife.  In his original Complaint, Plaintiff specifically pleaded "negligence," citing a New York State case in support of that claim; he also invoked a number of New York City health code provisions; and he claimed to seek a "civil penalty for a violation of state or local laws."  (*See* Compl. ("Bill of Particulars").) Although his proposed Amended Complaint is not identical in this regard, Plaintiff's motion for leave to file that pleading asserts, at least, that Plaintiff's wife has "suffered for the neg[li]gence of [Defendant]" (*see* Pl. Mot. To Amend., at 2), which leads this Court to conclude that, liberally construed, the proposed Amended Complaint should at least be read to include a negligence claim by Plaintiff's wife.  In addition, the proposed Amended Complaint appears to seek damages for "intentional infliction of emotional distress," another state-law tort claim. (Proposed Am. Compl. (section regarding damages).)

Under 28 U.S.C. § 1367, "district courts may decline to exercise supplemental jurisdiction" over pendent state or local claims, where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Sadallah v. City of Utica*, 383 F.3d 34, at 40-41 (2d Cir. 2004) (citing *Gibbs*, 383 U.S. at 726); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir. 1973) ("If it appears that the federal claims are subject to dismissal[,] . . . the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.").

In this instance, there is no compelling reason for the Court to retain jurisdiction of Plaintiff's (or his wife's) state or local claims. Indeed, it appears that Plaintiff's wife may be the one who principally seeks to assert a negligence claim at this point, and, as she has not been a party to this case, the parties have not engaged in discovery, in this Court, regarding her medical condition or claimed personal injury. Nor has the Court had any occasion to review the merits of any of Plaintiff's (or his wife's) potential state or local claims. In the absence of any exceptional circumstances that would warrant this Court's retention of jurisdiction over Plaintiff's state and local claims, I recommend that those claims be dismissed, without prejudice to Plaintiff and/or his wife re-asserting them in state court.

## CONCLUSION

For all of the reasons discussed above, I respectfully recommend that:

(1)     Plaintiff's federal race-discrimination claims, as asserted in his original Complaint under the 14th Amendment, the FHA, and Section 1981, be dismissed with prejudice;

(2)     Plaintiff's motion for leave to amend his Complaint so as to add a federal due process claim based on the "state-created danger doctrine" be denied as futile; and

(3)     Plaintiff's remaining state and local claims be dismissed without prejudice to his re-asserting those claims, whether alone or together with his wife, in the appropriate state court.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 1350, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

20

Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge McMahon.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir. 1983).  If Plaintiff does not have access to cases cited herein that are electronically reported, he may request copies from Defendant's counsel.  *See* Local Civ. R. 7.2.

Dated:  New York, New York
      July 16, 2012

                    Respectfully submitted,

                    DEBRA FREEMAN
                    United States Magistrate Judge

Copies to:

Hon. Colleen McMahon, U.S.D.J.

Mr. Ra Ptah Taharka Allen, *pro se*
1694 Madison Avenue
Apt. #14G
New York, NY 10029

Mindy M. Blackstock, Esq.
NYC Housing Authority - Law Department
250 Broadway, 9th floor
New York, NY  10007